Mary DEAN, Karen White, Winifred Mack and Elizabeth Taylor, for themselves and all others similarly situated, Plaintiffs-Appellees,

v.

Thomas A. COUGHLIN III, Commissioner of the New York State Department of Correctional Services; Raymond Broaddus, Assistant Commissioner for Health Services of the New York State Department of Correctional Services; Sydney Pollard, Dental Director of New York State Department of Correctional Services; Elaine Lord, Superintendent of Bedford Hills Correctional Facility; Jimmie Harris, Health Administrator of Bedford Hills Correctional Facility and Donald Collings, Dentist at Bedford Hills Correctional Facility, individually and in their official capacities, Defendants.

Appeal of Thomas A. COUGHLIN III, Commissioner of the New York State Department of Correctional Services; Raymond Broaddus, Assistant Commissioner for Health Services of the New York State Department of Correctional Services; Elaine Lord, Superintendent of Bedford Hills Correctional Facility and Jimmie Harris, Health Administrator of Bedford Hills Correctional Facility, Defendants-Appellants.

No. 113, Docket 86–2175.

United States Court of Appeals, Second Circuit.

Argued Sept. 8, 1986.

Decided Oct. 28, 1986.

Frederic L. Lieberman, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Barbara B. Butler, Asst. Atty. Gen., New York City, of counsel), for defendants-appellants.

William J. Rold, The Legal Aid Society, Prisoners' Rights Project, New York City (Philip L. Weinstein, Paul T. Belazis, Dori A. Lewis, John Boston, The Legal Aid Society, Prisoners' Rights Project, New York City, of counsel), for plaintiffs-appellees.

Before MANSFIELD, KEARSE and WINTER, Circuit Judges.

MANSFIELD, Circuit Judge:

On this appeal we are faced with the question of what role should be played and procedure followed by federal courts in remedying constitutional deficiencies in a

state's administration of its prisons—in this case the failure of New York State to provide adequate dental health care and services to prisoners at its Bedford Hills Correctional Facility (BH). In this civil rights action by prisoners under 42 U.S.C. § 1983 defendants, the Commissioner and Assistant Commissioner of the New York State Department of Correctional Services (DOCS) and the Superintendent and Health Administrator of BH, appeal from a mandatory preliminary injunction issued by the Southern District of New York, Shirley W. Kram, J., specifying in detail the system of dental care that is to be provided to BH inmates. Appellants' principal contention is that the district court abused its discretion by imposing upon the State the court's own plan for such care without finding that appellants' plan was constitutionally inadequate and by ordering appellants to take steps in providing dental care that were not constitutionally required. We vacate the injunction and remand the case for adoption of the plan proposed by the defendant, subject to such further modifications as may be made by the court after a hearing.

BH is a New York State correctional facility for women, which houses approximately 560 inmates. It serves as a maximum security prison, correctional facility and reception center. On March 2, 1984, several prisoners commenced this class action under § 1983, alleging that the existing system used by the defendants to provide dental care at BH was inadequate and violated their rights under the Eighth Amendment. They sought a declaratory judgment and permanent mandatory injunctive relief. More than a year later, in May 1985, the district court held an evidentiary hearing on plaintiffs' motion for preliminary relief, which it granted in a decision rendered on December 3, 1985. *Dean v. Coughlin*, 623 F.Supp. 392 (S.D.N.Y. 1985).

Judge Kram found a substantial likelihood that the plaintiffs would succeed in showing a pattern of deliberate indifference by the defendants to BH inmates' serious dental needs and that as a consequence the inmates were suffering and would suffer pain, loss of teeth, discomfort, anxiety, infection and life-threatening complications in violation of their constitutional rights. More specifically, the court found that some patients, despite their requests, never receive an initial or any other dental screening examination by a prison dentist, that the BH system for providing routine dental care at BH had become "defunct," and that BH had no reasonable method of systematically scheduling and handling dental examinations, fillings, cleanings, extractions, dentures, root canal needs and gum treatments. The BH procedure for requesting and handling emergency dental care had also broken down, with backlogs and delays of many months after requests were made before the requesting inmates were treated. Similarly, the BH dental clinic, despite directions by its dentists for follow-up visits by patients, failed to keep these appointments, leading to pain and suffering by the inmate-patients. Prophylactic care was not regularly provided to inmates. There were likewise failures or long delays in furnishing restorative care, e.g., filling of cavities, which prolonged the patients' pain and suffering.

On December 3, 1985, the district court, concluding that the prerequisites for preliminary relief had been met, ordered the defendants

"to provide a dental access system that assures prompt diagnosis and treatment for inmates with serious dental needs, provide a system that assures that follow-up care is provided as ordered and without delay, and take prompt steps to eliminate expeditiously the current backlogs in treatment. Defendants are furthermore ORDERED to take all steps necessary to comply with the terms of this order.

"The Court will not now be more specific regarding the terms of the injunction. It expects the defendant and plaintiffs to work out terms for compliance with the injunction in the first instance." *Dean v. Coughlin*, 623 F.Supp. at 405.

The defendants did not appeal the court's preliminary injunction.[1] On December 20, 1985, after the plaintiffs complained to the court that the defendants were not cooperating in furnishing discovery, and defendants' counsel informed the court of the efforts being made to work out a method of implementing the court's order, Judge Kram directed the parties to meet together and work out a plan for compliance with her order. Although the parties did thereafter confer with respect to a remedy on December 30, 1985, no progress was made except that the defendants advised that the State was negotiating with Mobile Health Services, a private contractor, to provide dental care and facilities that would satisfy constitutional requirements. On January 17, 1986, defense counsel advised Judge Kram at a status meeting of the State's negotiations with Mobile Health Services. Judge Kram, expressing the view that the State was dragging its feet, directed both sides to submit proposed orders by January 31, 1986. On January 31, 1986, the defendants served their proposed order incorporating by reference a "Plan for Implementation of the Preliminary Injunction", which was attached, upon the plaintiffs and on February 3, 1986, filed the order and Plan with the court. At approximately the same time plaintiffs served and filed their proposed order for implementation of the injunction.

The defendants' Plan consisted of a proposed contract between the State and "Mobile Dental Services, P.C." (MDS), a private provider of professional dental care to numerous institutions. The MDS contract incorporated a detailed "Plan of Care" for Bedford Hills designed to reduce the existing backlog and provide for continuous dental care thereafter for the BH inmates, including increased professional staff and operations, specific procedures to determine the dental needs of the BH population, methods for establishing treatment priorities, dental screening of prisoners simultaneously with the provision of call-

out, routine and emergency care, an assessment examination of each inmate, a sick call system, a follow-up appointment system, the utilization of an enlarged dental clinic which would have operatories and additional personnel, and the maintenance of a detailed individual dental record for each inmate. The defendants' Plan further provided that MDS would provide a "Policy and Procedures Manual" for BH and included copies of similar documents prepared by MDS for other organizations. The Plan also contained a proposed timetable for MDS' commencement of operations at BH, samples of computer records used by MDS and the background of MDS and its chief officers.

In short, the defendants' Plan appears to have been an effort to set forth a remedy for the deficiencies in dental care found by the court to exist in BH, which would be implemented by an established, independent organization specializing in the provision of such care to institutions. The defendants' counsel advised the court that the proposed contract between the State and MDS would be signed upon the court's approval of the Plan, that the state agencies involved had already given their preliminary approval and could be expected to give their final approval within 10 days after the court's approval, and that dental services would be provided by MDS within two weeks thereafter.

The plaintiffs' proposal also contained procedures and some 165 requirements for provision of dental care at BH. The defendants' objected to it as excessively detailed and intrusive, going beyond the limits fixed by the Supreme Court for judicial involvement in the operation and control of a state correctional facility. *See Rhodes v. Chapman*, 452 U.S. 337, 351, 101 S.Ct. 2392, 2401, 69 L.Ed.2d 59 (1981) (courts should avoid issuing relief representing "a court's idea of how best to operate a detention facility"); *Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 1001–02

---

1. Trial of the plaintiffs' action for a permanent injunction is scheduled to begin on November 3, 1986.

(3d Cir.), *rehearing denied*, 718 F.2d 1247 (3d Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984). Some of the detailed specific requirements to which the defendants objected in letters to the court included the following:

(1) Specific time frames for treatment. Objected to as inconsistent with sound medical practice;

(2) Independent compliance audits or monitor systems. Defendants prefer quarterly audits prepared by MDS for DOCS Dental Review Committee;

(3) Multi-language requirements in dealing with patients. Defendants urge that orientation in English and Spanish is sufficient;

(4) Establishment of specific number of days for treatment steps and time frames for delivery of dental care. Objected to by defendants as unrealistic and not gauged to patient's needs;

(5) Written notification to each patient of time of next appointment. Objected to on security grounds, with defendants favoring oral notification and delivery of daily written callout slips to patients;

(6) Inspections of dental clinics by plaintiffs on 72 hours notice. Objected to as disruptive and unnecessary in view of MDS' independence and its agreement to furnish the court and plaintiffs with any and all reports, internal evaluations and audits, and computer printouts of services prepared by MDS;

(7) Provision against disciplining of inmates for requesting dental sick call even if found to be unnecessary and an abuse of the system. Objected to on the ground that due process discipline is necessary to prevent manipulation of system by prisoners;

(8) Dental treatment priorities. Objected to on the ground that the American Dental Association's priorities, which are incorporated in the defendants' Plan are more comprehensive;

(9) Dental sick call referrals from facility health staff. Objected to as too broad and open-ended and on ground that the MDS system is more appropriate;

(10) Evaluation systems. Defendants prefer systems drawn up by MDS and found in its Policies and Procedures Manual for BH;

(11) Chart entries and monthly reports. Defendants prefer usual types of records and reports kept by professionals on basis of need rather than those based on court deadlines.

Simultaneously the defendants submitted to Judge Kram a schedule comparing in detail the plaintiffs' and defendants' proposed plans and requested the court to approve the latter.

Thus appellants did not object to the concept of a plan containing specific provisions but to those features of the plaintiffs' plan considered to be unnecessary, in conflict with established medical practice, excessively intrusive, unrealistic, or threatening to MDS itself. In the last category was a proposal that MDS furnish a copy of the plaintiffs' plan to its professional staff with a notice that any violation might result in a fine or imprisonment. On March 19, 1986, not having been accorded a hearing by the court on the parties' objections to each others' plans and receiving no court ruling as to the plan that would be approved, defendant Coughlin entered into a contract with MDS which was approved by the Attorney General on March 25, 1986, and by the New York State Comptroller on March 27, 1986.

Despite differences between the parties as to the terms of preliminary relief that should issue pursuant to the district court's December 3, 1985, decision, the judge did not explore the matter further with the parties but on April 1, 1986, issued a "preliminary injunction" which opened by criticizing the defendants for "dilatory tactics", non-production of certain "current dental records", refusal to enter into settlement negotiations, resistance to legitimate discovery requests, and "failure even to attempt to improve dental services at Bedford Hills as ordered". *Dean v. Coughlin*, 633 F.Supp. 308, 309 (S.D.N.Y.1986).

Judge Kram was apparently unaware of the State's having already contracted with MDS for services according to the terms of its Plan since she stated, "the Court encourages the defendants to continue their negotiations with MDS." *Id.* at 310. The preliminary injunction then set forth in considerable detail the terms of a dental services program to be followed by BH. Although the injunction adopted some of the defendants' proposals (e.g., priority classifications) it for the most part incorporated the specific provisions proposed by the plaintiffs. The injunction commenced by establishing, as both sides had suggested, a priority system, to be adopted within 10 days, for classification of patients as follows:

*Class One:* non-priority

*Class Two:* low-priority

*Class Three:* high-priority

*Class Four:* emergency

The priorities were listed in the following order: emergencies, elimination of pathosis and extraction of teeth; removal of irritating conditions that may lead to malignancies; treatment of bone and soft tissue diseases; repair of injured or diseased teeth; and replacement of lost teeth and restoration of function. The order specified the assessment examinations to be given to the inmate population; systems for dental sick-call, appointments and follow-up; treatment deadlines for non-emergency patients; handling of dental emergencies; maintenance of facilities needed to carry out the court's injunction (including operatories, intra-oral X-ray unit, pan-oral X-ray unit, X-ray developer); personnel (including two full-time dentists, one full-time dental hygienist, one full-time dental assistant and one full-time dental records clerk); hours of operation; the dental records to be kept for each patient (including chart of teeth; medical history; assessment of periodontal condition; X-rays, which must be mounted or otherwise affixed to the record; chronological entries for every patient encounter, which must show treatment found by dentist to be needed, and the priority assigned to it; dentist's orders for follow-up examinations and medication; and an individualized treatment plan for each patient).

The injunction ordered the defendants (1) to notify inmates within 10 days that they may request an assessment examination by a dentist, (2) to complete such examinations within 45 days of the order; (3) to notify each inmate of the dentist's findings and of the inmate's treatment priorities; (4) to maintain a log of all patients so examined, containing details to be entered on the inmate's dental chart; and (5) to notify the court by detailed affidavit, furnishing a copy of each log. Sign-up sheets conspicuously marked "Requests for Dental Care" were ordered to be posted daily in all BH housing areas, with details to be furnished by the requesting inmate or, where it is not feasible for the inmate to sign, to have facility personnel do so at the patient's request. Such sheets are to be picked up and delivered to the dental clinic daily by 9:00 A.M. The order further provided that all patients requesting dental sick call must be examined within one week, that defendants must keep a daily log of all patients examined at sick call with specific information as to each such patient and file an affidavit within 45 days of the injunction to the effect that the court's sick-call system had been adopted.

The district court's preliminary injunction contains similar detailed provisions with respect to an appointment and follow-up system, treatment deadlines for non-emergency patients and dental emergencies. Defendants were ordered to give each patient, before leaving the dental clinic, a follow-up appointment slip specifying the date and time of the appointment, to keep a "prosthetic device log" with specified information as to each patient requiring such a device and mandating a follow-up appointment, and a "missed appointment log". The deadlines for treatment of non-emergency patients were fixed according to classification of the patient. For example, Class Three patients were required to be examined within 30 days after their being certified as such during the first three months after assessment. Spe-

cific time periods and records were also fixed for all other non-emergency patients.

The defendants were further ordered to provide immediate access by the health care staff to dental emergency cases, with the examination to be made by a dentist on the day of the request or, if a dentist is not present, by a physician or nurse, with dental examination to follow on the next day. Logs with respect to each such case were required to be kept. The court's order also provided that it was to be implemented by BH's security staff, which was to transmit all requests for emergency dental assistance to the dental clinic and health staff by telephone and assist inmates who did not have direct access to sign-up sheets. Defendants were required within 5 days to distribute the order to all BH inmates, post it conspicuously and orient all inmates as to the services available, procedure for requesting services and the method of handling complaints. Plaintiffs' counsel were to have the right on 72 hours notice to inspect all BH dental care with or without experts and review records for compliance. Defendants were also ordered to designate a person to be responsible for receiving and investigating complaints. An extremely detailed compliance report was required to be filed with the court every 30 days.

On April 17, 1986, the defendants furnished to Judge Kram a copy of the contract which the State had entered into with MDS for provision of dental care at BH, pointing out the few respects in which it differed from the earlier Plan submitted on January 31, 1986, i.e., (1) use of State indemnification in lieu of malpractice insurance, (2) permission to MDS to have the option of replacing a dental assistant with a second dental hygienist, (3) option to MDS to employ additional dentists in place of dental hygienists or assistants without reducing the minimum staffing level required. Also attached was a copy of detailed "Policies and Procedures for Mobile Dental Services P.C. at Bedford Hills Correctional Facility," which had not been completed at the time of the January 31 submission.

The 53–page MDS "Policies and Procedures" manual set forth in reasonable detail the organization's objectives at BH, standards to be followed by it in rendering dental service there, scheduling of elective and emergency visits by inmates during working and non-working hours, dissemination of patients' appointment schedules and call-out slips, use of MDS mobile dental units as an adjunct to BH's fixed premises (described in an MDS appendix), the method to be used for handling patient flow and emergencies, the type and contents of emergency kits to be located at BH's Dental Section, procedure for handling of complaints, form of patients' dental records to be kept, systems for storage and retrieval of patients' dental records, measures for maintaining the security of such records, internal monitoring of the dental clinic on a continual basis, and a system for reporting the number of patients treated and procedures performed. The scope and type of dental service (e.g., preventive, prophylactic, diagnostic, relief of pain, emergency case) were described in detail. Treatment priorities were also set forth, including classification of patients into four categories, similar to those adopted by the American Dental Association and the court, scheduling of continuing care, and criteria for selecting patients to be examined, based on treatment priorities. Emergency cases to be seen and treated on the same day were listed. Class 3 type cases, involving conditions requiring early treatment, were listed with the statement that they were to be seen "as soon as possible, not later than seven days after receipt of request". Class 2 type cases, involving conditions requiring treatment but not of an urgent nature, were listed as required to be "seen on an elective basis, appointment scheduled not less than 30 days after the request and treatment initiated." Class 1 cases, those apparently needing no dental treatment, were to be scheduled under "a routine six month recall system." The procedure for initial assessment, treatment protocol, initial evaluation, follow-up visits, post operative care, medical clearance and many more relevant matters were carefully

described and samples of the records and forms to be used were attached.

The defendants' April 17, 1986, letter requested Judge Kram to modify her April 1 injunction to incorporate the MDS plan instead of that specified by the order. The requested modification was not made by the court. This appeal followed.

## DISCUSSION

Appellants contend that the district court erred in (1) adopting without a hearing its own detailed plan instead of that proposed by them for curing the perceived constitutional deficiencies in the existing system, which were found to be inadequate in the court's December 3, 1985, opinion, (2) failing to give them a reasonable opportunity to modify their own plan to the extent necessary to rectify any perceived constitutional inadequacies, (3) basing its injunction on findings that are not supported in the record, and (4) adopting a plan that is excessively detailed and improperly intrusive, regulating activities that do not violate plaintiffs' constitutional rights, and thus exceeding the court's jurisdiction. These contentions require a brief review of principles governing a federal court's exercise of its remedial powers with respect to a state's conduct of its activities.

The standard by which we are governed in reviewing the scope and type of injunctive relief issued by a district court is whether the injunction amounts to an abuse of its equitable remedial discretion. *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 15–16, 91 S.Ct. 1267, 1275–76, 28 L.Ed.2d 554 (1971); *Hanson Trust PLC v. SCM Corp.,* 774 F.2d 47, 54 (2d Cir.1985); *Coca-Cola Co. v. Tropicana Products Inc.,* 690 F.2d 312, 315 (2d Cir.1982). Although a federal district court's powers are broad, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief," *Rizzo v. Goode,* 423 U.S. 362, 379, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976), particularly when it comes to regulating a state's administration of its own facilities, including its

schools and prisons, *Rhodes v. Chapman,* 452 U.S. 337, 352, 101 S.Ct. 2392, 2402, 69 L.Ed.2d 59 (1981); *Bell v. Wolfish,* 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979); *Hutto v. Finney,* 437 U.S. 678, 687 & n. 9, 98 S.Ct. 2565, 2572 & n. 9, 57 L.Ed.2d 522 (1978); *Preiser v. Rodriguez,* 411 U.S. 475, 491–92, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973).

Once the district court finds an unconstitutional condition in a state's prisons, the court may be tempted to right the wrong by assuming control of the entire system in which the offensive condition exists and prescribing a new system deemed to meet constitutional requirements. However, since the court is usually "ill equipped to deal with the increasingly urgent problems of prison administration," *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974), it owes "deference to the appropriate prison authorities", *id.,* lest the imposition by the court of its own broad changes designed to cure a constitutional infirmity not only offend the state's entitlement to respect but amount to an unnecessary overkill. We have repeatedly been cautioned (1) not to use a sledgehammer where a more delicate instrument will suffice, (2) not to move too quickly where it appears that the state, in the exercise of its administrative authority, will in its own way adopt reforms bringing its system into compliance with the Constitution, and (3) to give the state a reasonable opportunity to remedy a constitutional deficiency, imposing upon it a court-devised solution only if the state plan proves to be unfeasible or inadequate for the purpose. *Rhodes v. Chapman, supra,* 452 U.S. at 351–52, 101 S.Ct. at 2401–02; *Bell v. Wolfish, supra,* 441 U.S. at 547–48, 99 S.Ct. at 1878; *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974); *Procunier v. Martinez, supra,* 416 U.S. at 404–05, 94 S.Ct. at 1807.

Restraint and initial deference to state institutional authorities in curing unconstitutional conditions are furthermore advisable as a matter of realism; federal courts lack the facilities or expertise needed for

formulation and day-to-day administration of detailed plans designed to assure that a state will provide constitutionally acceptable prison services. The court's limited resources and supervisory facilities must accordingly be restricted to intensive use only in those hardcore cases where a state has failed to come forward with a reasonable plan or remedy. *See, e.g., Hutto v. Finney, supra,* 437 U.S. at 687 & n. 9, 98 S.Ct. at 2572 & n. 9. A remedial court order must strike a balance between the court's obligation to identify and take steps toward the elimination of constitutional violations and the state's right to administer its own prisons, with the state continuing to have the discretionary responsibility for devising and carrying out a plan whereby it will operate its facilities in a constitutional manner as directed by the court. As the Supreme Court stated in *Preiser v. Rodriguez, supra,* 411 U.S. at 491–92, 93 S.Ct. at 1837:

"[i]t is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons ... Since these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems ... The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons." (footnote omitted).

*See in accord Union County Jail Inmates v. DiBuono, supra,* 713 F.2d at 1001–02; *Ruiz v. Estelle,* 679 F.2d 1115, 1145, 1148 (5th Cir.), *vacated in part as moot,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Hoptowit v. Ray,* 682 F.2d 1237 (9th Cir.1982), *appeal after remand sub nom. Hoptowit v. Spellman,* 753 F.2d 779 (9th Cir.1985).

Plaintiffs' reliance upon our decision in *Todaro v. Ward,* 565 F.2d 48 (2d Cir.1977), for the proposition that the district court may without hearing impose in the first instance its own detailed remedial order is misplaced. In that case the order was not a preliminary one, such as that at issue here, but a final judgment issued after a full-scale lengthy trial. Although one would expect such a judgment to be more detailed than a preliminary injunction, it was nevertheless narrow in scope; we described it as "instituting ... narrow reforms [which] will not be unduly burdensome or costly." *Id.* at 54 (footnote omitted). Moreover, in a detailed opinion the trial judge "rejected many of appellees' claims of inadequate medical care, drawing careful distinctions between those practices which, while perhaps undesirable, do not amount to constitutional infractions, and those that do." *Id.* at 53 (footnote omitted). Lastly, the *Todaro* defendants, unlike those here, do not appear to have taken issue with the district court's refusal to accept the scope of the remedy proposed by them, i.e., whether deference should be paid to their proposed implementation, but with the need for any remedy at all.

Applying the foregoing principles to the present case, although the district court's December 3, 1985, opinion granting preliminary relief was thoroughly considered, its April 1, 1986, issuance of its own remedial order, instead of using as its guide the thorough MDS Plan subject to minor modifications, departed from basic concepts of comity and federalism by which we are governed. In brief, the court went too far and too fast in imposing upon the state correctional facility its own ideas of how a prison dental clinic should be organized and administered rather than giving appropriate deference to the State's Plan. Although the latter, as submitted by the defendants on January 31, 1986, pursuant to the court's order and supplemented by the MDS detailed "Policies and Procedures" manual, may not necessarily be fully adequate as it stands, it appears to provide a reasonable remedy to be implemented by

an independent, objective organization with extensive experience in the delivery of dental care to numerous institutions, for each of the constitutional deficiencies forming the basis of the district court's December 3, 1985, decision. Even the plaintiffs, while objecting to some of the MDS Plan's provisions, apparently felt compelled to recognize its basic adequacy, stating to the district court that "there is a striking degree of harmony in the substantive approaches offered by the parties."

We cannot agree that the district court was justified in its action by any delay or dragging of feet on the State's part. Following its May 3, 1985, hearing on plaintiffs' application for preliminary relief, the court itself had waited for six months, i.e., until December 3, 1985, to enter its decision, a delay undoubtedly due to its overwhelming caseload. In view of the many provisions which were then required to be drafted by the parties and incorporated into a suitable remedial plan, the two-month period taken by them thereafter to prepare and submit their respective proposed plans does not seem to have been excessive.

Under all of the circumstances, it was an abuse of discretion for the district court not to use the State's carefully and conscientiously formulated remedial plan as the basis for relief, with such modifications as might appear essential to assure compliance with minimum constitutional requirements. It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for dental care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. The BH correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of BH prisoners would not in freedom or on parole enjoy the excellence in dental care which the plaintiffs understandably seek on their be-

half. We are governed by the principle that the objective is not to impose upon a state prison a model system of dental care beyond average needs but to "provide the minimum level of [dental] care required by the Constitution." *Ruiz v. Estelle, supra,* 679 F.2d at 1150. "The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves...." *Id.* at 1149. "[T]he essential test is one of medical necessity and not one simply of desirability." *Woodall v. Foti,* 648 F.2d 268, 272 (5th Cir.1981) (citation omitted).

Appellees' contention, that the Plan proposed by the defendants fails to meet the requirement of Fed.R.Civ.P. 65(d) that it be "specific in terms" because it was to be incorporated by reference in a proposed order rather than set forth in *haec verba* in the order itself and because the State's contract with MDS had not been signed by the parties at the time when it was submitted for approval, must be rejected as bordering on the frivolous. The terms of the MDS Plan, as amplified by its "Policies and Procedures for Mobile Dental Services P.C. at Bedford Hills Correctional Facility" were sufficiently specific and detailed to preclude any substantial issues as to enforceability or compliance that might otherwise arise because of vagueness. The court's incorporation of these specific terms by reference in an order, to which they are attached, would fully satisfy the requirements of Rule 65(d).

Nor can we agree with appellees' contention that the differences between the defendants' proposed order and that formulated by the court are so minimal as to be insignificant. The defendants' concerns related to serious remedial provisions, including certain specific time frames and artificial treatment deadlines believed to be unrealistic or aimed at achieving a perfect or ideal system of care rather than one mandated by the Constitution.[2] Some of defendants' objections to the plaintiffs' pro-

2. Moreover, the threat that precise time deadlines or time frames in the preliminary injunction ultimately to be issued by the court would face the defendants with unjustified contempt charges based on non-compliance may be minimized by incorporating a provision, such as that in Par. IX B of the district court's April 1, 1986, order, authorizing a dentist to deviate therefrom

**216**

posed plan, which were voiced in detail in defendants' February 7, 1986, letter to the court, apply equally to similar provisions in the court's later April 1, 1986, order.

On the other hand, we cannot accept the defendants' suggestion that, although they are prepared voluntarily to implement all provisions of the MDS Plan, the district court is barred by the Eleventh Amendment from requiring certain specific actions, such as adherence to specific time deadlines. Although some provisions of the MDS Plan, standing alone, may go beyond what is constitutionally mandated, the district court may, in view of the defendants' past failure to provide the minimum level of dental care required by the Constitution, insure that that level will in the future be met by ordering the adoption of measures that would not otherwise be appropriate. If experience under the MDS Plan reveals that some of these specific provisions are no longer necessary, the district court may then be obligated to delete them upon the defendants' motion. In any event, the defendants will further be protected against inappropriate or unnecessary strictures by a provision in the order authorizing the treating dentist to depart from the injunction's deadlines for sound medical reasons.

Accordingly, we direct that the district court's preliminary injunction be vacated and that upon remand the district court issue an order directing the defendants to comply with the detailed terms of the MDS Plan (including its deadlines and time frames) as amplified by its "Policies and Procedures For Mobile Dental Services P.C. at Bedford Hills Correctional Facility." The order should contain (1) a provision similar to that found in Par. IX B of the district court's April 1, 1986, order authorizing the treating dentist to depart from

any provision when in the dentist's opinion adherence with respect to a patient would be contrary to sound medical judgment, and (2) a provision authorizing the defendants, whenever any part of the order no longer appears to be constitutionally mandated, to move for relief from such a provision, which shall not be unreasonably denied.

The preliminary injunction is vacated and the case is remanded to the district court for further proceedings consistent with this opinion.

---

when adherence would be contrary to sound medical judgment. Par. IX B provides:

"B. Whenever, in the professional opinion of the treating dentist, commencement or continuation of treatment for a particular patient within the deadlines imposed by this Order is contrary to sound medical judgment, the dentist's opinion shall control. In such cases, the dentist shall enter on that patient's dental chart the reasons why adherence to the

Court's deadline for that patient is contrary to sound medical judgment. A monthly report of all such cases shall be made to the Court and to plaintiffs' counsel."

This reasonable provision could be supplemented by one authorizing the defendants, whenever any part of the order no longer appears to be constitutionally required, to move in the district court for its exclusion, which should be granted if the court agreed.