104 F.3d 355
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Rabbi Yitzchok LEBLANC-STERNBERG, Chanie Leblanc-Sternberg,
Fred Walfish, Lewis Kamman, Park Avenue Synagogue,
Inc., Plaintiffs-Appellees,
v.
Robert FLETCHER, Nick Vertullo, Raymond Kane, Maureen
Kendrick, John C. Layne, Individually and in their
Capacities as Trustees of the Village of Airmont and as
Officers and Board Members of the Airmont Civic Assoc., and
the Village of Airmont, Defendants-Appellants,
UNITED STATES of America, Plaintiff-Appellee,
v.
The VILLAGE OF AIRMONT, Airmont Civil Association, Ralph
Bracco, in his capacity as Mayor of the Village of Airmont,
John C. Layne, Raymond Kane, Charles Calotta, and Ronald
Sabo, in their capacities as Trustees of the Village of
Airmont, Defendants-Appellants.
 No. 96-6149.
 United States Court of Appeals, Second Circuit.
 Dec. 6, 1996.
 
 Appeal from the United States District Court for the Southern District of New York (Goettel, J.).
 
 
 1
 FOR APPELLANTS:Dennis Lynch, Dorfman, Lynch & Knoebel, Nyack, NY.
 
 
 2
 FOR APPELLEES:Sara L. Shudofsky, Assistant United States Attorney, Southern District of New York, New York, NY; Craig L. Parshall, Fredricksburg, VA.
 
 
 3
 S.D.N.Y.
 
 
 4
 AFFIRMED.
 
 
 5
 Present: OAKES, McLAUGHLIN and CABRANES, Circuit Judges.
 
 
 6
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued.
 
 
 7
 ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the judgment of the district court be and it hereby is AFFIRMED.
 
 
 8
 The Government filed an action under the Fair Housing Act, 42 U.S.C. § 3601 et seq. ("FHA"), in 1991, against the Village of Airmont ("Village"), alleging that the Village was formed for the purpose of excluding Orthodox Jews by, among other things, imposing restrictions on Jewish forms of residential worship. Specifically, the Airmont Civic Association ("ACA"), an organization whose purpose was the incorporation of the Village, was to enact a zoning ordinance completely preventing worship in homes--a primary method of Orthodox Jewish worship. At roughly the same time, a private group of rabbis initiated an action, which was consolidated with the government case for discovery and trial. The private action was before a jury, while the government action was tried to the court.
 
 
 9
 After an eight week trial, a jury found that the Village had violated the plaintiffs' rights under the FHA and the First Amendment. The district court (Goettel, J.) (S.D.N.Y.) then dismissed the government action, reasoning that because the Village had only passed the zoning regulations, but had not applied the regulations, there had not yet been a violation of the FHA. The district court refused to order injunctive relief because: (1) it would be enjoining acts which were already illegal; and (2) "if there is any action taken in the future which violates [the Orthodox Jews'] rights, the United States Government ... will not be timorous about suing." United States v. Village of Airmont, 839 F.Supp. 1054, 1064-65 (S.D.N.Y.1993) (Airmont I ), rev'd and remanded, 67 F.3d 412 (2d Cir.1995), cert. denied, 116 S.Ct. 2546 (1996). The district court then granted the Village's motion for judgment as a matter of law in the private action, and set aside the jury verdict.
 
 
 10
 In September, 1995, this Court reversed, see LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 431 (2d Cir.1995) (Airmont II ), cert. denied, 116 S.Ct. 2546 (1996), reasoning that the evidence supported the jury's determination that the Village had violated the FHA. This Court held that there was evidence that the events leading to the incorporation of the town and the implementation of its zoning code "amply support a finding that the impetus was not a legitimate nondiscriminatory reason but rather an animosity toward Orthodox Jews as a group." Airmont II, 67 F.3d at 431. The court also held that there was support for the jury's finding that the motivation behind the enactment of the zoning regulations was anti-Semitism, and its "implicit finding that Airmont's zoning code would be interpreted to restrict the use of home synagogues." Id. (emphasis supplied).
 
 
 11
 This Court held that the district court erred in concluding that injunctive relief was not proper, because the FHA explicitly provides that courts enter injunctive relief against parties who have violated the FHA " 'as is necessary to assure the full enjoyment of the rights granted by the [FHA].' " Airmont II, 67 F.3d at 434. This Court held that "[t]he view that such relief was premature because Airmont had not yet actually applied its zoning provision invidiously was a misapplication of the [FHA]." Id. at 434-35. The Court then directed on remand, that the district court "fashion appropriate equitable remedies." Id.
 
 On remand, Judge Goettel ordered:
 
 12
 . A prohibitory injunction, enjoining the Village from: (1) promoting religious discrimination; (2) denying equal protection to religions by use, interpretation, or enforcement of the zoning code; and (3) discriminating in housing based on religion, or interfering with the exercise of religion through housing.
 
 
 13
 . A mandatory injunction, requiring the Village to revise its zoning code so that it could not be construed to prevent home worship, or to prevent persons from walking to and from places of religious worship. The court specifically called for an addition to the zoning code entitled "Residential Place of Worship." Such places were defined as "area[s] located within a residence that is used for the conducting of religious services." The order provided that such places "will be permitted by right on any day in all residential zones."
 
 
 14
 . The retention of documents and notification provisions. The Village was ordered to keep all documents related to zoning decisions, notify the government of any such decisions, or of any meetings of planning or zoning boards at which applications touching on religious worship will be presented.
 
 
 15
 LeBlanc-Sternberg v. Fletcher, 922 F.Supp. 959, 964-65 n. 15 (S.D.N.Y.1996) (Airmont III ).
 
 
 16
 We review a district court's award of equitable and injunctive relief for abuse of discretion or a clear error of law. See EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1542 (2d Cir.1996).
 
 
 17
 The Village argues that the mandatory injunction conflicts with Milliken v. Bradley, 433 U.S. 267 (1977) in three respects: (1) the injunction is disproportionate because there is "no existing violation by [the Village];" rather "it was what the Village of Airmont will 'predictably' do that the Second Circuit found improper in its appellate crystal ball;" (2) the injunction is not remedial; and (3) the district court usurped the role of the local government by creating a new set of zoning regulations, thereby violating well-settled principles of federalism. The Village is wrong.
 
 
 18
 In Milliken v. Bradley, 433 U.S. 267, 280-281 (1977), the Supreme Court noted that a federal court exercising its equitable power must focus on three factors: (1) the remedy must "be determined by the nature and scope of the constitutional violation;" (2) the equitable decree must be remedial in nature, i.e. it must " 'restore the victims of discriminatory conduct to the position they would have occupied in the absence of such conduct;" and (3) the federal courts must respect the role of state and local authorities in the management of their affairs.
 
 
 19
 Though by no means unlimited, the power of the federal courts to remedy constitutional violations is broad and flexible. See United States v. Yonkers Bd. of Educ., 837 F.2d 1181, 1235 (2d Cir1987). In general, the power to intrude into municipal functions should be exercised only where there has been a constitutional violation. Id. The court should tailor its remedy to fit the nature and extent of the violation. See Milliken v. Bradley, 418 U.S. 717, 738 (1974); Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 16 (1971). "The Supreme Court has not required that the 'least restrictive means of implementation' be adopted but has 'recognized that the choice of remedies to redress racial discrimination is 'a balancing process left, within appropriate constitutional or statutory limits, to the sound discretion of the trial court.' " Yonkers, 837 F.2d at 1236 (quoting United States v. Paradise, 480 U.S. 149, 184 (1987) (quoting Fullilove v. Klutznick, 448 U.S. 448, 508 (1980) (Powell, J., concurring) (quoting Franks v. Bowman Transp. Co., 424 U.S. 747, 794 (1976) (Powell, J., concurring in part and dissenting in part)))). The district court has "first-hand experience with the parties and is best qualified to deal with the 'flinty, intractable realities of day-to-day implementation of constitutional commands,' " and must be given great flexibility and broad discretion in choosing a remedy best suited to curing the violation. Paradise, 480 U.S. at 184 (quoting Swann, 402 U.S. at 6). In determining whether [an] order was "narrowly tailored," the court must "acknowledge the respect owed a District Judge's judgment that specified relief is essential to cure [a Constitutional] violation." Yonkers, 837 F.2d at 1236 (quoting Louisiana v. United States, 380 U.S. 145, 154 (1965)).
 
 
 20
 A district court has " 'not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.' " Id.; see also Swann, 402 U.S. at 15 (scope of a district court's equitable powers to remedy past wrongs is broad). Equitable relief under the FHA may "be structured to achieve the twin goals of insuring that the Act is not violated in the future and removing any lingering effects of past discrimination." Marable v. Walker, 704 F.2d 1219, 1221 (11th Cir.1983). In the past, this and other circuits have allowed federal district courts to make changes to, and even strike whole portions of, statutory codes to cure constitutional violations by local municipalities and ensure that the municipality did not violate the Constitution in the future. See, e.g., United States v. City of Parma, 661 F.2d 562, 578 (6th Cir.1981), cert. denied, 456 U.S. 926 (1982). We have, ourselves, specifically ordered the rezoning of a municipality to ensure compliance with Constitutional mandates. See Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926, aff'd, 488 U.S. 15 (1988).
 
 
 21
 1. Commensurate Remedy. The Village asserts that there was no existing violation of the FHA, and that the only violations were those found in the Second Circuit's "crystal ball." However, this court previously held that the Village had violated the FHA by passing a zoning code based on religious animus, and found it "predictable from the evidence in this record" that the Village would violate the Constitution by enforcing the code in the future in a discriminatory manner. Airmont II, 67 F.3d at 434. This was an egregious constitutional violation, calling for a commensurate injunctive remedy. The district court needed to fashion a remedy that both cured the past constitutional violation and obviated the threat of future constitutional violations. The district court therefore issued a prohibitory injunction and a mandatory, forward-looking injunction.
 
 
 22
 The prohibitory injunction served to cure past constitutional violations by forbidding a repetition of the Village's past discriminatory practices. Judge Goettel was clearly within his discretion when he ordered the Village to cease promoting religious discrimination, denying equal opportunity to religions by use, interpretation, or enforcement of the zoning code in a way to prevent home worship, and from discriminating in housing due to religion, or interfering with the exercise of religion through housing. Such actions are exactly those which the FHA intended to curtail.
 
 
 23
 Judge Goettel was also clearly within his discretion in ordering forward-looking, mandatory injunctive relief against "likely" constitutional violations. The affirmative injunction, requiring the Village to revise its zoning ordinance so that it could not be construed to prevent home worship and to add provisions to protect "Residential Place[s] of Worship," was necessary to ensure that the Village could not hinder or prevent worship in homes. The amendments to the zoning regulations require the Village to allow such worship--an effective way of ensuring that the village permits the use of residential dwellings for worship.
 
 
 24
 2. Remedial in Nature. Judge Goettel ordered mandatory injunctive relief grudgingly, arguing that in doing so he was forced to ignore the Supreme Court's recent instruction that injunctive relief in such cases be remedial in nature. Judge Goettel felt that affirmative relief did not improve any rights already exercised by Orthodox Jews in Airmont, but "simply [was] insurance that there can be no challenges to their exercise of religion in their homes in the future," and therefore was not truly "remedial." Airmont III, 922 F.Supp. at 964 n. 15. Generally, a remedial measure is one that places the parties in a position they would have occupied but for the constitutional violation. Missouri v. Jenkins, 115 S.Ct. 2038, 2048 (1995). However, that a measure is prospective, because it deters future constitutional violations, does not imply that it is not remedial. In certain instances, prospective injunctions are essential to ensure compliance with constitutional and statutory mandates in the future. Cf. Alabama-Tombigbee Rivers Coalition v. Department of Interior, 26 F.3d 1103, 1107 (11th Cir.1994).
 
 
 25
 Here, the injunction ensured that rights to free exercise of religion were unencumbered, and the constant threat of limitation of those rights was lifted. This forward-looking aspect of the injunction only requires that the Village do that which the FHA and the Constitution already requires. See Marable, 704 F.2d at 1221 (FHA injunction may be structured to ensure FHA not violated in future and to remove effects of past discrimination). In that regard, it placed the parties in a position which ensured that their constitutional rights remained inviolate.
 
 
 26
 3. Federalism. There is, of course, always a federalism concern when the federal court steps in to remedy some municipal problem. This court has cautioned that federal courts should not encroach on a state's ability to remedy constitutional deficiencies, should not use a "sledgehammer where a more delicate instrument will suffice," and should not "move too quickly where it appears that the state ... will in its own way adopt reforms bringing its system into compliance with the Constitution." Dean v. Coughlin, 804 F.2d 207, 213 (2d Cir.1986). Here, there was no indication that the Village was going to make the changes necessary to guarantee that no constitutional violations occurred in the future. Indeed, this Court ruled that future violations were "likely." Given the Village's history and its disregard of this Court's clear holding that it was in violation of the FHA, this injunction was necessary to ensure that the Village complied with the mandates of the FHA.
 
 
 27
 We have considered all of the arguments raised by the Village, and find them to be without merit.
 
 
 28
 Accordingly, the judgment of the district court is AFFIRMED.