969 F.2d 1416
 140 L.R.R.M. (BNA) 2884
 ASSOCIATION OF SURROGATES AND SUPREME COURT REPORTERS WITHIN
THE CITY OF NEW YORK, Mary O'Leary, President; Citywide
Association of Law Assistants, Barbara Brown, President;
Court Attorneys Association of the City of New York, Robert
Mulhall, President; Court Officers Benevolent Association
of Nassau Co., Jeffrey Pollac, President; District Council
37, American Federation of State, County & Municipal
Employees & Local 1070, Paul Shelkin, President; Local 704,
Service Employees International Union, John Walsh,
President; New York State Supreme Court Officers
Association, ILA, Local 2013, AFL-CIO, John McKillop,
President; Ninth Judicial District Court Employees
Association, Martin Sharp, President; Suffolk County Court
Employees Association, Inc., Thomas F. McGuinness,
President; the Communications Workers of America, AFL-CIO,
Local 1180, Arthur Cheliotes, President; Civil Service
Forum, Local 200, SEIU, Salvatore Cangiarella, President;
Janet Foster; Susan Glasbrenner; Michael Sullivan; David
Richman; Greg Snigor; James DiNapoli; William Rosario;
Abel Peltro; George F. Berhorn; Lisa Rosenzwig; and
Michael Smith, Plaintiffs-Appellees,
v.
STATE OF NEW YORK; Edward V. Regan, as Comptroller of the
State of New York; and Robert Abrams, as Attorney
General of the State of New York,
Defendants-Appellants,
and
Matthew T. Crosson, as Chief Administrator of the Unified
Court System and the State of New York Unified
Court System, Defendant-Appellee.
 No. 1039, Docket 91-7936.
 United States Court of Appeals,
Second Circuit.
 Petition for Rehearing Submitted June 19, 1992.
Decided July 20, 1992.
 
 Before LUMBARD, NEWMAN and WINTER, Circuit Judges.
 ON PETITION FOR REHEARING
 WINTER, Circuit Judge:
 
 
 1
 Matthew T. Crosson, Chief Administrator of the New York court system, petitions for rehearing from the panel decision vacating Judge Patterson's order directing restitution to be paid from the surplus in the Judiciary Budget for Fiscal Year ("FY") 1990-91. Association of Surrogates v. New York, 966 F.2d 75 (2d Cir.1992). Familiarity with that decision is assumed.
 
 
 2
 Crosson challenges the majority's decision as intruding unnecessarily on New York's governance of its fiscal affairs because the opinion stated that "State Finance Law Section 40(2)(a) ... directs that the restitution be from FY 1991-92 appropriations, while State Finance Law Section 40(3) directs that the FY 1990-91 surplus go to the General Fund." Id. at 79. He argues:
 
 
 3
 It was totally unnecessary for the majority to have interpreted New York law by determining from which corpus of funds restitution should have been paid. Once it was determined that the lag payroll was unconstitutional, and that the District Court overstepped its equitable powers in directing payment from a particular body of funds, then the Court should simply have overturned the District Court's order and left it to State officials to work out, under New York law, how the restitution was to be paid.
 
 
 4
 This assertion is exactly the opposite of the position taken by Crosson in the district court and before us on appeal. On August 23, 1991, Crosson moved for an immediate decision by the district court ordering restitution from the FY 1990-91 appropriation to the judiciary because the FY 1990-91 surplus would automatically return to the General Fund on September 15, 1991, pursuant to Section 40(3). One ground for that request was Crosson's argument that such relief was required under Section 40(2)(a). Recognizing that he was asserting a state claim that a federal court might be reluctant to address, his papers argued that the proper interpretation of Section 40(2)(a) was "only a collateral issue," and "there most likely would not be time to obtain an interpretation of New York law from the state courts." Judge Patterson complied with Crosson's request to address the state claim, and the bulk of his opinion dealt with Section 40(2)(a), concluding that it compelled restitution from the FY 1990-91 surplus. The exercise of jurisdiction that Crosson now describes as "totally unnecessary" was thus undertaken solely because of his request.
 
 
 5
 In our court, Crosson continued to press for an interpretation of Section 40(2)(a) and his brief quoted approvingly the district court's remark that it was " 'simply directing the defendants to pay the lagged wages ... in order to comply with section 40 of the State Finance Law.' " Brief of Appellee Crosson at 26-27 (quoting Association of Surrogates v. New York, 772 F.Supp. 1412, 1416 (S.D.N.Y.1991). Crosson's brief stated that interpretation of Section 40(2)(a) was "no ... significant intrusion" into New York's affairs but was "at best a collateral issue that entails a simple bookkeeping transaction." The brief for the state argued generally that federal courts should not intrude into state fiscal affairs but specifically contended that Judge Patterson's order was inconsistent with Section 40(2)(a).
 
 
 6
 In those circumstances, with the state agency and the state asking us to address a state issue affecting the remedy over which we clearly had jurisdiction, with no party seeking a state court resolution (Crosson disavowing such an action), and with the issue being a dispositive basis for the district court judgment, we addressed it. Had any of these factors been absent, we would have agreed with Judge Lumbard that we should exercise our discretion not to resolve the state law issue. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). We emphasize, therefore, that this case is not a precedent for federal judicial intervention into a state's fiscal affairs absent the unique factors outlined above. We also note, however, that respect for observing the differing roles of state and federal authorities should be mutual and that a state agency that invokes the jurisdiction of a federal court over a state issue should not attack the exercise of that jurisdiction on grounds of federalism when it receives an adverse ruling.
 
 
 7
 Furthermore, Crosson's petition for rehearing is wrong in stating that the judgment of our court directs New York to fund restitution out of FY 1991-92 appropriations. Our decision merely vacated the portion of the district court's order directing that restitution be funded out of FY 1990-91. It did not order that restitution be from the FY 1991-92 appropriation. Were a New York authority, be it legislature, court, or state official, to direct that the funding be from FY 1990-91, they would not violate any order issued in this case. It may be, of course, that if litigation over this issue was commenced in a state court, a defense of issue preclusion based on our reasoning as to the period for which salaries were unpaid would be asserted. However, the risk of facing such a defense in the future was obvious when Crosson urged the district court to exercise its remedial jurisdiction by adjudicating the state law issue.
 
 
 8
 In light of the above discussion, we modify one portion of the opinion. The sentence in the panel opinion at 4181 stating that "State Finance Law Section 40(2)(a) ... directs that the restitution be from FY 1991-92 appropriations, while State Finance Law Section 40(3) directs that the FY 1990-91 surplus go to the General Fund" is unnecessary to the judgment. Judge Patterson determined that a liability from FY 1990-91 still existed and that restitution must be made from FY 1990-91 funds. We disagreed and concluded that the only liability was for salaries owed in FY 1991-92. That conclusion undermined Judge Patterson's ruling that state law compelled restitution out of FY 1990-91 funds and was a sufficient basis to vacate his order. It was thus unnecessary for us to opine from which FY's appropriations restitution should be made, and we need not, therefore, have added that State Finance Law § 40(2)(a) directed restitution from FY 1991-92 funds or that State Finance Law § 40(3) directed that the FY 1990-91 surplus go to the General Fund. This sentence seemed unimportant at the time because the parties appeared to agree that the legal conclusion reflected in it would automatically follow from our holding that the unpaid salary was for FY 1991-92. Because we now believe the drawing of that legal conclusion was unnecessary to the judgment, we withdraw that sentence.
 
 
 9
 Finally, we note that neither our prior opinion nor this opinion addresses the legal consequences, if any, flowing from the fact that payment has already been made and charged to the FY 1990-91 judiciary surplus.
 
 
 10
 We grant rehearing and modify our prior opinion to the limited extent indicated in this opinion. The judgment remains unaltered.
 
 
 11
 LUMBARD, Circuit Judge, concurs in a separate opinion.
 
 LUMBARD, Circuit Judge, concurring:
 
 12
 I concur in the court's opinion to the extent that it grants the petition for rehearing and retracts the sentence of the panel opinion at 79 stating that "State Finance Law Section 40(2)(a) ... directs that the restitution be from FY 1991-92 appropriations, while State Finance Law Section 40(3) directs that the FY 1990-91 surplus go to the General Fund." As I stated in my original concurring opinion, however, I would also omit all discussion or interpretation of state law matters
 
 
 13
 I also disagree with the court's suggestion that Crosson's earlier arguments to the district court requesting that it interpret state finance laws justifies our doing so on appeal. The original opinion expressly rejected Crosson's arguments when it found that "the order mandating restitution from the FY 1990-91 budget was an intrusion into New York's fiscal affairs not commensurate with the scope of the constitutional violation," and vacated the district court order. Association of Surrogates v. New York, 966 F.2d 75, 79 (2d Cir.1992). It is inconsistent to now rely on those same arguments to justify our own intrusion into state affairs. Furthermore, a request by one party that a federal court involve itself in state affairs is certainly no reason for it to do so. As the panel opinion properly noted, federal courts must "exercise 'a proper respect for the integrity and function of local government institutions,' and recognize the strong 'need of a State to administer its own fiscal operations.' " Association of Surrogates v. New York at 79 (citations omitted). These concerns, central to our system of federalism, may not be ignored at a litigant's request.
 
 
 14
 Because I agree that we should grant the petition and retract the sentence in the panel opinion at page 79 interpreting State Finance Law Section 40(2)(a), I concur in that part of the order.