Jane SCHWARTZ; Lorraine Tufarella; Yvonne S. Carmona, individually and on behalf of their minor children and on behalf of a class of all other persons similarly situated, Plaintiffs,

and

Georgianna Bloch; Maria Santiago; Maria Moore; Janet Rivera; Doneen Johnson, Intervenors–Plaintiffs,

v.

Mary Pat DOLAN, Commissioner of the Tompkins County Department of Social Services; Edwin J. Miner, Commissioner of the Chautauqua County Department of Social Services; Michael J. Dowling,[1] Commissioner, N.Y.S. Dept. of Social Services, Defendants.

No. 85–CV–1025 (FJS).

United States District Court, N.D. New York.

June 16, 1994.

1. Edwin J. Miner and Michael J. Dowling are hereby substituted as named defendants in this action pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Greater Upstate Law Project (Susan C. Antos, of counsel), Albany, NY, Finger Lakes Health Systems Agency (Rene H. Reixach, of counsel), Rochester, NY, Chemung Legal Services (Alicia Plotkin, of counsel), Ithaca, NY, Chautauqua County Legal Services (Raymond A. Yox, of counsel), Jamestown, NY, for plaintiffs.

Legal Aid Society (Susan R. Sternberg, of counsel), Brooklyn, NY, Greater Upstate Law Project (Susan C. Antos, of counsel), Albany, NY, Greater Upstate Law Project (June Castellano, of counsel), Rochester, NY, Neighborhood Legal Services (Colleen Pawl-

ing, of counsel), Buffalo, NY, for intervenor-plaintiffs.

G. Oliver Koppell, Office of Atty. Gen., State of New York, Dt. of Law (Jeffrey M. Dvorin, Asst. Atty. Gen., of counsel), Albany, NY, Office of Leonard J. Snow (Leonard J. Snow, of counsel), Ithaca, NY, Office of Social Services (Alfred McKee, of counsel), Mayville, NY, for defendants.

SCULLIN, District Judge.

## MEMORANDUM–DECISION and ORDER

### I. Background

Plaintiffs Jane Schwartz, Lorraine Tufarella and Yvonne S. Carmona, individually, on behalf of their minor children, and on behalf of a class of all persons similarly situated, together with plaintiff-intervenors Georgianna Bloch, Doneen Johnson, Maria Santiago, Maria Moore and Janet Rivera, individually, on behalf of their minor children and on behalf of all persons similarly situated (collectively, the "plaintiffs") are recipients of Aid to Families with Dependent Children ("AFDC") or home relief benefits for themselves and their minor children. Plaintiffs bring this lawsuit against the Commissioner of the New York State Department of Social Services (currently Michael J. Dowling) (the "defendant"), Mary Pat Dolan, the Commissioner of the Tompkins County Department of Social Services, and Charles V. Fiorella, the Commissioner of the Chautauqua County Department of Social Services (collectively, the "defendants").

Pursuant to assignments voluntarily provided by individuals receiving Home Relief or assignments that must be given by persons as a condition of receiving AFDC,[2] local support collection units ("SCUs") are entitled to receive and collect child support payments that are due plaintiffs. In accordance with the Deficit Reduction Act of 1984, codified at 42 U.S.C. §§ 602(a)(8)(A)(vi) and 657(b), as well as New York Social Services Law § 131–a(8)(a)(v), plaintiffs are entitled to re-

ceive the first $50.00 of current support collected by SCUs on behalf of AFDC recipients, and to have these payments, known as "pass-through" payments, disregarded in determining a household's eligibility to receive public assistance benefits. 42 U.S.C. § 602(a)(8)(A)(vi).

SCUs inform public assistance recipients of the amount of the pass-through payments received by SCUs through, *inter alia*, monthly mailers that are sent out by the New York State Department of Social Services ("NYSDSS") to public assistance recipients.[3] The NYSDSS does not provide a monthly mailer to an individual if no such support has been received by the social services district for two consecutive months since, under such circumstances, there is no collection or disbursement activity regarding their right to a pass-through. These monthly mailers resume whenever a support payment is subsequently collected.

In their complaint, plaintiffs seek, *inter alia*, declaratory and injunctive relief against the defendants for their alleged failure to (i) pay plaintiffs support payments to that which they claim they are entitled; (ii) provide plaintiffs with adequate notice concerning support collected on their behalf along with the basis for determining their eligibility for pass-through payments; and (iii) provide administrative hearings to review and correct errors concerning pass-through payments. They also seek a one-time notification to all class members of all support collected for their respective cases since October 1, 1984, along with a notification that if a class member believes that any support payments should have been passed through but were not, or were passed through but in the wrong amount, that a fair hearing will be held to review the matter on request within sixty (60) days after such one-time notice is given.

### II. Procedural History

In 1986, the NYSDSS implemented, on a state-wide basis, an internal "desk review"

---

**2.** *See* 42 U.S.C. § 602(a)(26)(A); New York Social Services Law, § 348(2).

**3.** These mailers advise public assistance recipients of the amount of current child support that has been collected on a month-specific basis and

the consequent issuance of a child-support payment based on that collection. A sample monthly mailer has been submitted by the defendant and is contained in docket no. 72.

procedure that is utilized by NYSDSS in resolving disputes regarding pass-through payments. A "desk review" is a state level administrative review, conducted by a staff member of the NYSDSS, of a local district's actions concerning a public assistance recipient's inquiry or dispute regarding their pass-through payment(s). Staff members who perform such reviews have received training by the state regarding the procedures that are to be utilized in order to obtain the information necessary to resolve a recipient's inquiry. In November 1991, the NYSDSS issued a formal manual containing written procedures that staff members are to follow during the desk review process.[4] Persons dissatisfied with the desk review results may seek a review of such determinations pursuant to Article 78 of New York's Civil Practice Law and Rules ("CPLR").

In 1990, plaintiffs conducted a review of all desk reviews performed in upstate New York, and a sample of desk reviews performed in New York City. Plaintiffs claim that such review confirmed their belief that the mailers sent by the NYSDSS failed to provide public assistance recipients adequate notice concerning the basis of the determinations made by the NYSDSS regarding the public assistance recipients' right to pass-through payments. Plaintiffs claim that their review also identified inadequate procedural due process protections existing in the desk review procedure, and that such defects should be remedied by affording public assistance recipients a right to an administrative hearing before an administrative law judge wherein disputes concerning pass-through payments could be heard.

As of January 1, 1993, federal law has required AFDC recipients who have assigned their support rights to SCUs to be provided with detailed monthly or quarterly—as opposed to annual—notices of support collected. If a state utilizes monthly notices, such notices must detail the support collected for that month, unless no support has been collected on behalf of the public assistance recipient for the month in question. A state may provide quarterly, rather than monthly, notices to public assistance recipients if such state also provides an automated voice response system ("VRS") to its public assistance recipients that provides users of the system with the information that would otherwise be included in the detailed monthly notice.

The NYSDSS has developed a VRS that is accessible to public assistance recipients via touch-tone telephones, and provides users of the system with the information that would otherwise be included in the detailed monthly notices required by federal regulations. Since it has implemented a VRS, the NYSDSS has opted to provide public assistance recipients in the state with quarterly, rather than monthly, notices.[5]

After undertaking significant discovery in this action, plaintiffs moved for summary judgment on their complaint against the defendants. In the papers submitted in support of such motion and in opposition to defendant NYSDSS's cross-motion for summary judgment, plaintiffs claim that the procedures utilized by defendant NYSDSS in resolving disputes related to pass-through

**4.** According to the defendants, at such desk reviews, a NYSDSS staff member investigates the pass-through inquiry for all months included in the request. Such investigation includes a review of the NYSDSS's records, including the Welfare Management System ("WMS") for public assistance data, and the Child Support Management System ("CSMS") for support collection data. The investigation also involves an evaluation of all the documents or other information provided by the public assistance recipient, the support obligor, the support obligor's employer, or other sources. A case file is created and maintained for each desk review. Based upon the records reviewed during the desk review, the desk reviewer determines whether the public assistance recipient is entitled to a pass-through

payment, and provides the recipient with a written response summarizing the status of the desk review. The recipient is given an opportunity to rebut the reviewer's determination regarding the disposition of their case if the reviewer's determination is not 100% favorable to the public assistance recipient. Affidavit of Oscar R. Best (5/17/93) (docket no. 43) ("Best Aff.") at ¶ 19.

**5.** As noted above, the NYSDSS does provide monthly mailers to public assistance recipients, discussed *supra*. These mailers, however, do not contain all of the information that is required under federal law regarding monthly *notices* provided by states that have opted to provide monthly notices.

payments violate the Due Process clause of the United States Constitution (the "Constitution") in two ways. First, plaintiffs contend that the notice provided by the NYSDSS fails to provide public assistance recipients with sufficient notice to permit them to determine whether they are receiving all of the pass-through payments to which they are entitled. Second, plaintiffs argue that the NYSDSS must provide public assistance recipients with an administrative hearing concerning disputes over the determination made by the NYSDSS regarding the amount of pass-through payments.

In its cross-motion for summary judgment, defendant NYSDSS claims that the notices provided by the NYSDSS and the desk reviews provided by this Department, in conjunction with the right of public assistance recipients to appeal the determination made by the Department under Article 78 of the CPLR, affords the plaintiffs all that process necessary under the Due Process clause.

## III. Discussion

### A. Summary Judgment Standard.

■ Pursuant to Rule 56(c), the moving party bears the initial burden of showing the court that summary judgment is appropriate by pointing to "pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits ... that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding such a motion, the court is not to resolve disputed issues of fact, but rather, to assess whether a genuine issue regarding a material fact remains for the trier of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To avoid summary judgment, a non-movant must demonstrate that there is some evidence which would create a genuine issue of material fact.

See Twin Laboratories, Inc. v. Weider Health and Fitness, 900 F.2d 566, 568 (2d Cir.1990) (emphasis added). Without a genuine issue or issues of material fact, there is no need for trial, because there is no triable dispute between the parties which would warrant continuing the action at the trial level. See Celotex, 477 U.S. at 327, 106 S.Ct. at 2555.

In the case before the Court, the parties do not dispute the facts regarding the procedures utilized by the NYSDSS in notifying public assistance recipients about pass-through payments. Rather, the principle issue that this Court must resolve concerns plaintiff's contention that the procedures that are used by the NYSDSS regarding these payments violate the Due Process clause of the United States Constitution.

■ In determining the salient factors to be considered in ascertaining whether the plaintiff has a meritorious claim, the Court finds the Supreme Court's decision in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) to be instructive. In that case, the Court held that three factors are to be considered by courts in determining the amount of procedural due process that is warranted in a given case: (i) the private interest affected by the government action; (ii) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and (iii) the government interest, including the administrative and fiscal burdens which would result from the additional or substitute procedural safeguards. Mathews v. Eldridge, 424 U.S. at 335, 96 S.Ct. at 903; Goetz v. Crosson, 838 F.Supp. 136, 139 (S.D.N.Y.1993); see also Beasley v. Ginsberg, 1989 WL 202144 (D.Conn. October 2, 1989) at *10 (applying Mathews factors to due process claim regarding pass-through payments). Thus, this Court must review each of plaintiffs' claims in light of these three factors in order to determine whether the current procedures utilized by the NYSDSS comport with the requirements of Due Process.

**B. Adequacy of the notices sent out by the NYSDSS to public assistance recipients.**

As discussed *supra*, monthly mailers are utilized by the NYSDSS in providing public assistance recipients information about pass-through payments received by the NYSDSS. Moreover, the NYSDSS also provides public assistance recipients with a VRS and quarterly notices that provide such recipients with further information about the status of their pass-through payments and their ability to contest the amounts provided by the NYSDSS.

The plaintiffs claim that the notices currently provided by the NYSDSS fail to provide public assistance recipients with enough information to permit them to evaluate the state's allocation of support payments and determine whether they are receiving the entire pass-through to which they are entitled. They claim that the following information must be included on the monthly mailers issued by the NYSDSS in order for such mailers to comport with the requirements of the Due Process clause of the Constitution:

> [T]he recipient's name and the name of the child on whose behalf the support is collected; the name of the absent parent from whom support is collected; the amount of the support obligation; the date of the notice and the month or other period of time covered by the notice; date of payment of each support payment reported and amount and method of payment; amount of pass through paid; and if no pass-through is paid on support collected, an explanation of the reason; amount retained by the NYSDSS; and notice of the right to challenge the determination.

Plaintiff's Memorandum of Law in Support of their Motion for Summary Judgment (docket no. 38) ("Pl.Mem.") at 28.

With respect to the first factor, i.e., "private interest affected," plaintiffs argue that the requested information is critical to public assistance recipients, since pass-through payments are frequently not issued until a month or more after the support payment is made, thereby making it difficult for a recipient to know whether a pass-through payment was improperly missed even in a month when a recipient receives no pass-through. Thus, plaintiffs argue that the private interest of public assistance recipients in obtaining more detailed information from the NYSDSS regarding pass-through payments is high.

The defendant concedes that the plaintiffs have an interest in receiving pass-through payments, and that such payments provide an additional $50 of support for AFDC recipients. However, the defendant argues that the Deficit Reduction Act, which created pass-through payments, serves a number of purposes in addition to providing AFDC families with additional support, and that "both the amount and purposes served by the pass-through payment must be considered in weighing the first of the three *Mathews v. Eldridge* factors." [6] It notes that, unlike other welfare-type benefits, the right to receive pass-through payments is not "needs-based," and that comparison of such payments to public assistance benefits that are needs-based is inappropriate. The NYSDSS further claims that however significant the $50 pass-through may be to the public assistance recipient, it is not of the same importance as the AFDC grant itself.

■ This Court is cognizant of the fact that a payment of up to $50 as a pass-through can be a significant supplement to a family with limited resources. However, in addition to providing a supplement to public assistance recipients, the pass-through provision (a) provides an incentive for AFDC recipients to cooperate with support enforcement; (b) provides an incentive for absent parents to make regular and timely support payments; and (c) helps reduce governmental spending and the federal deficit. *See, e.g., Vanscoter v. Bowen*, 706 F.Supp. 1432, 1437 (W.D.Wash.1988), *aff'd in part, rev'd in part* 920 F.2d 1441 (9th Cir.1990). Moreover, since such payment is a bonus, and not a benefit to which the family becomes entitled based upon need, plaintiffs' interests are

---

**6.** Defendant's memorandum of law in support of their cross-motion for summary judgment (docket no. 44) ("Def.Mem.") at 14–16.

not as compelling as those of persons who face the reduction or termination of AFDC benefits. *Beasely v. Ginsberg,* 1989 WL 202144 at *11 (citing *Vanscoter v. Bowen,* 706 F.Supp. at 1438); *see also Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Bennett v. White,* 671 F.Supp. 343, 349–51 (E.D.Pa.1987), *aff'd in mem* 865 F.2d 1395 (3rd Cir.1989).

Turning to the second factor, i.e., "risk of erroneous deprivation," plaintiffs contend that such risk would "significantly diminish" if the NYSDSS improved the contents of its notices. Plaintiffs contend that the notices currently in use create:

> [A]n unacceptable level of confusion.... [M]any plaintiffs are so ill-informed of the rules governing issuance of pass-through payments, and have so little understanding of the individualized information provided to them, that they cannot evaluate the monthly determinations of eligibility and cannot meaningfully access administrative review procedures when the agency makes errors.

Pl.Mem. at 43–44.

As to this factor, defendant points out that since February 1992, the monthly mailers sent by the NYSDSS contain a variety of information, including: the recipient's name, address and case number; the date of the notice; the amount of current support due and paid during the month immediately prior to the month in which the notice was dated and which was received by the local district during that month and during the month immediately prior to the date of the notice; an explanation that the recipient may receive up to $50 of the current support collected if the recipient has not yet received a pass-through payment for the specific month; information advising the recipient of their right to contact their public assistance caseworker if they have any questions concerning the recipient's past record of pass-through payments; and a toll-free number by which re-cipients can request a desk review if they are dissatisfied with the caseworker's determination.[7] Defendant notes that the quarterly notices provided by the NYSDSS include a separate listing of payments collected from each absent parent when more than one absent parent owes support; an indication of the amount of current support and arrearages collected; and the amount of support collected which was paid to the family.[8] Finally, the annual notices provided to public assistance recipients in New York contain the following information: the support obligor's name and account number; the total amount of support collected from the obligor during the preceding 12 months; the amount of support collected that was disbursed during the preceding 12 months by the local district to the public assistance recipient receiving child support services; the amount of support collected that was disbursed to the recipient's local district by the NYSDSS during the preceding 12 months; and the address and telephone number of the local SCU providing the notice to the recipient.[9] In sum, defendant argues that the current notices provided by the NYSDSS provide sufficient information to public assistance recipients so as to alert them of any discrepancy in their pass-through payments and their right to challenge the determination made by the NYSDSS regarding such payments. *See* Defendant's Memorandum of Law in Support of its Cross–Motion for Summary Judgment (docket no. 44) ("Def.Mem.") at 31–32.

The evidence before the Court on this issue indicates that a large number of desk review requests by public assistance recipients are from individuals who have, in fact, received pass-through payments for the months in question, but apparently do not understand the notice sent by the NYSDSS. *See* Declaration of Susan R. Sternberg (5/4/92) (docket no. 37) ("Sternberg Aff.") at ¶ 23 and Exhibits B and D. Thus, there appears to be confusion among some public

---

7. A sample monthly mailer has been submitted by the defendant and is contained in docket no. 72.

8. A sample quarterly notice has been submitted by the defendant and is contained in docket no. 72.

9. A sample yearly client disbursement notice has been submitted by the defendant and is contained in docket no. 72.

assistance recipients regarding the content of the notices provided by the NYSDSS. Moreover, 48% of the desk reviews completed between November 1991 through March 23, 1992 resulted in the issuance of pass-through payments that were not previously paid; while 31% of completed desk reviews resulted in the issuance of corrective payments covering more than one month. *See* Sternberg Aff. at ¶ 22 and Exhibit D. Additionally, in just under half of the desk reviews conducted in New York City which resulted in the issuance of corrective pass-through payments (56 out of 128), the New York City desk review log indicated that "problem with CSMS information," i.e., a problem with the SCUs computerized information, was the reason for the failure to issue a pass-through payment when due. *Id.* at 24 and Exhibit D.

■ Since it is clear that a significant percentage of public assistance recipients that received a desk review were entitled to the issuance of pass-through payments that were not previously paid, it appears as though a number of public assistance recipients may be confused by the content of the notice sent by the NYSDSS and therefore fail to request a desk review, despite the fact that such a review may result in the issuance of additional pass-throughs. The Court finds that such confusion on the part of recipients, and the resultant failure on the part of public assistance recipients to request and receive desk reviews in appropriate situations, would be diminished or reduced if the notices currently used by the NYSDSS were somewhat more informative and easier to understand.

With respect to the third factor, i.e., the "governmental interest," plaintiffs argue that providing the additional information sought in the notices would not impose an undue burden on the defendants.

As to this aspect of the *Eldridge* factors, defendant argues that:

> In addition to lacking any practical purpose, expanding the notice in the manner proposed by Plaintiffs would create a document far more complicated in detail than the NYSDSS's notice in its current form. The resultant document would include an abundance of useless elements and, as such, would likely generate much confusion on the part of recipients.... Moreover, inclusion of the items proposed by Plaintiffs would require the expenditure of enormous amounts of systems resources in order to modify [O]CSE's CSMS and the NYSDSS's WMS.

*Id.* at 33–34. Defendant further argues that the notices requested by the plaintiffs, in addition to being confusing, "would generate innumerable unnecessary questions from recipients, requiring an enormous amount of resources by the NYSDSS and the districts in order to respond to those inquiries month after month." *Id.* at 37.

The Court is cognizant of the fact that states are being increasingly asked to expend larger sums of money on public assistance programs, despite the fact that these states may well have fewer and fewer dollars in their treasuries in which to adequately finance such programs. Courts cannot ignore the reality that the resources available for states in general, and the State of New York in particular, to address issues of public assistance and welfare have become increasingly scarce. Thus, this Court must ensure that the changes that this Court orders the NYSDSS to make to the notices it provides to public assistance recipients are not so great so as to impose an undue burden on the state.

After thoroughly reviewing all of the submissions by the parties in this regard, this Court finds that the Due Process rights of public assistance recipients in this state will be satisfied when the NYSDSS implements the modifications to the notices discussed by Jeffrey M. Dvorin, counsel for defendant NYSDSS, in his letter of April 29, 1993 (April 29th letter). Additionally, the defendant is directed to provide certain information requested by the plaintiffs in their memorandum in response to the April 29th letter.[10]

---

10. This letter discusses modifications to the notices provided by the NYSDSS to public assistance recipients that the defendant claimed it would consider making after extensive negotiations with plaintiffs' counsel in this regard. This letter was drafted at the request of the court and was the culmination of numerous discussions by the parties hereto regarding proposed modifica-

■ The Court therefore orders the NYSDSS to implement the following changes with respect to the notices utilized by it regarding pass-through payments. The NYSDSS is hereby ordered to continue the use of the monthly mailer and to (a) clarify the preprinted language on the monthly mailer substantially in the manner requested by the plaintiffs; (b) provide, in the monthly mailer, information regarding the legal collection date of the payment,[11] the form of payment, the amount of the pass-through payment and the amount of the payment obligation; (c) change the language contained in the Client Information Booklet relating to pass-through payments substantially in the manner requested by the plaintiffs; (d) consider proposals offered by the plaintiffs with respect to changes to the VRS; (e) include in (or with) the quarterly notice (i) generic information concerning the pass-through, (ii) information that advises public assistance recipients of other media through which information is available concerning their pass-through payments, and (iii) a breakdown, for each month covered by the quarterly notice, of the amount of support payments received by the local SCUs for the public assistance recipient; (f) add the public assistance case number to the upstate mailer; (g) provide a coded explanation of why a specific recipient of the mailer may not receive a pass-through payment for the period reported or why less than $50.00 is passed-through, as well as an explanation of the pertinent codes; cross-reference the monthly mailer and the itemized receipts issued by the Electronics Benefits Issuance Computer ("EBICS") and the Electronic Payment Funds Transfer ("EBFT") systems, by which public assistance recipients receive their public assistance benefits and pass-through payments; and (h) clarify the EBICS/EBFT codes sub-

stantially in the manner requested by the plaintiffs.

Counsel for the NYSDSS and the plaintiffs are to confer with one another in order to come to an agreement regarding the means by which the above changes will be effectuated and a realistic timetable concerning the implementation of such changes, and to report back to the Court within forty-five (45) days from the date of this order as to the progress that the parties hereto have made in this regard.

### C. Adequacy of the desk reviews provided by the NYSDSS to public assistance recipients.

Plaintiffs argue that a large percentage of errors in payments have been discovered in the desk review process, and cite as an example that 101 of 256 desk reviews completed between April 1991 and September 1991 resulted in the issuance of at least one pass-through payment which had not been previously issued to the public assistance recipient. Sternberg Aff. at ¶ 21 and Exhibit B.[12] Plaintiffs claim that the defendant fails and refuses to provide them with monthly notices sufficiently detailed to enable plaintiffs to determine when pass-through payments to which they are entitled are not properly issued. They also claim that the desk review performed by the NYSDSS are inadequate because such review does not provide public assistance recipients an opportunity for a review and explanation of defendant's records of payments received, and does not provide plaintiffs with assistance in securing testimony or records regarding timely support payments made on the recipients behalf. They claim that the desk review "falls far short of the evidentiary fair hearing protections provided for all other public assistance benefits payment disputes," and that defendant's procedures violate the Due Process and Equal Protection Clauses of the Constitution.[13] Plaintiffs argue that the private

tions of the NYSDSS's notice to public assistance recipients relating to pass-through payments.

11. Thus, for a direct payment case, the NYSDSS is to provide the date of receipt of the support payment by the SCU; in an income execution case, the defendant is to provide the date of the withholding of income.

12. With respect to the desk review procedures available to public assistance recipients, the

Court notes that more than 2,700 plaintiff class members have requested such reviews between January 1988 and May 1992.

13. *See* Plaintiffs' memorandum of law in support of their motion for summary judgment (5/8/93) ("Pl.Mem.") at 26–28.

interest of public assistance recipients in having access to fair hearings in which to appeal determinations of the NYSDSS is high. They claim that fair hearings are necessary because the pass-through eligibility determination is not a straight-forward determination that may be readily made by viewing certain documents, but rather may involve the review of documentation that is not in the possession of either the public assistance recipients or the NYSDSS. For that and other reasons discussed in their briefs, plaintiffs' contend that the "paper review" provided by the desk review is inadequate in numerous cases.[14]

The defendant, not surprisingly, has proffered quite a different argument in support of its contention that the hearings requested by the plaintiffs are inappropriate in matters involving disputes over the amount of pass-through payments.

Defendant re-emphasizes that the Deficit Reduction Act that created pass-through payments serves a number of purposes in addition to providing AFDC families with additional support, and that, unlike other welfare-type benefits, the right to receive pass-through payments is not needs-based, and that the pass-through may not be viewed with the same importance as the AFDC grant itself. Def.Mem. at pp. 14–16.

As to the risk of erroneous deprivation, plaintiffs contend that a fair hearing as a second level of administrative review would eliminate the numerous problems that allegedly exist as a result of the desk review currently provided by the NYSDSS. At the hearing proposed by the plaintiffs, which would be held subsequent to the desk review already utilized by the NYSDSS, the plaintiffs argue that

> An administrative law judge ("ALJ") would assist the recipient in identifying the issues and would review the correctness of the local agency's determination and the adequacy of the efforts to obtain relevant documentation. If necessary, the case would be remanded to the local agency with directives for further development; or a subpoena would be issued by the ALJ for

proof which the agency could not obtain by less formal means.

Plaintiffs' Memorandum in Opposition to Defendant's Cross–Motion for Summary Judgment ("Pl.Mem. in Opposition") at 18.

As to this factor, defendant notes that, given the relatively straight-forward nature of the issues raised regarding pass-through payments, desk reviews are an ideal means by which disputes regarding such payments may be resolved. Unlike administrative hearings, defendant argues that disputes regarding pass-throughs "do not involve the sorts of issues which usually raise questions of credibility or veracity." *Id.* at 20. It contends that the presentation of live testimony or mechanisms for rendering credibility determinations are unnecessary in such hearings, and that therefore the risk of erroneous deprivation of pass-through payments would not be decreased should administrative hearings be ordered by this Court. It claims that the plaintiffs have failed to demonstrate that the desk reviews provided by the NYSDSS fail to effectively resolve disputes concerning pass-throughs, and that the figures provided by the plaintiffs regarding corrected payments that the NYSDSS has ordered after conducting a desk review "confirm that the desk review process has proven quite effective in resolving public assistance recipients' concerns relating to their pass-through payments." *Id.* at 24.

As to the third *Eldridge* factor, plaintiffs contend that the defendant has failed to demonstrate how providing access to such a fair hearing would create a burden for the NYSDSS. Plaintiffs argue that "[t]he possibility of 300 additional hearing requests state-wide in a system that already conducts more than 50,000 hearings (regarding other matters) per year is a small price to pay for due process...." Pl.Mem. in Opposition at 21–22.

With respect to this aspect of the *Eldridge* factors, defendant notes that Oscar R. Best, the Deputy Commissioner for the Division of Income Maintenance in the NYSDSS, has testified that the costs to the NYSDSS in

---

**14.** Plaintiff's memorandum of law in opposition to defendant's motion for summary judgment (8/17/92) ("Pl.Mem. in Opposition") (docket no. 47) at pp. 15–17.

implementing the fair hearings requested by the plaintiffs would be substantial and that additional staffing at the Department would be necessary in order to implement such hearings despite the scarcity of resources available to the NYSDSS from the state.

■ After thoroughly examining all of the evidence before it on this issue, this Court finds that the Due Process rights of public assistance recipients in this state will be satisfied when the NYSDSS implements the modifications to the notices ordered above, and that the NYSDSS need not provide the fair hearings requested by the plaintiffs to further ensure that the rights of public assistance recipients regarding the receipt of pass-through payments have not been violated. In particular, the Court finds that while public assistance recipients have an undeniable interest in receiving accurate pass-through payments, the evidence before the Court does not demonstrate that the risk of the erroneous deprivation of such payments would be decreased in a manner that would justify the increased administrative and fiscal burdens that the NYSDSS would incur should it be ordered to provide these fair hearings.

In sum, the Court finds that the Due Process Rights of public assistance recipients will be met when the NYSDSS modifies the notices it sends out in the manner described above. Public assistance recipients that believe they are entitled to additional pass-through payments may request desk reviews in order to explore any discrepancies that they believe exist regarding the amount of the pass-through. Public assistance recipients that believe that an error still exists after such desk review may seek a review of the NYSDSS's determination pursuant to Article 78 of New York's CPLR. Therefore, defendant's cross-motion for summary judgment on this aspect of plaintiffs' claims must be granted.

**15.** Plaintiffs had also requested that notices be mailed to all current and past proposed plaintiff class members of the availability of a fair hearing in the event that a desk review conducted by the NYSDSS failed to resolve the dispute regarding the pass-through. Complaint, Prayer for Judgment at ¶ 8. However, in light of this court's

### D. Retroactive relief.

The relief sought by the plaintiffs in the present action includes an order that would direct the NYSDSS:

[T]o instruct all social services districts to notify all ... plaintiff class members on a one time basis of all support collected for their case since October 1, 1984, showing the amounts and dates of receipts of all sums passed through, identified by the period covered by each such payment, of the terms under which support is passed through and that, if they believe that they did not receive all the pass-through payments to which they were entitled or were underpaid pass-through payments for any month, a desk review will be conducted and, if the desk review does not fully resolve the dispute, a fair hearing will be held to review the matter on request....

Complaint, Prayer for Judgment at ¶ 7.[15]

In support of this request, plaintiffs contend that they seek "classic *Quern*-type [16] notification that this lawsuit has resulted in a favorable determination about their due process rights and that there are now state administrative remedies which they may wish to pursue," and that the requested notice is merely ancillary to the injunctive relief sought in this action. Pl.Mem. in Opposition at 30–31.

Defendant argues that the notice requested by the plaintiffs herein:

[I]s far from the simple explanatory notice approved in *Quern,* which the Court found would "not trigger the state administrative machinery." 440 U.S. [at] 348 [99 S.Ct. at 1149]. The notice sought by plaintiffs, instead, directly orders the state to take actions to effect retroactive relief.

Def.Mem. at 43. Defendant claims that the requested notice is therefore barred by the Eleventh Amendment.

In *Quern v. Jordan,* the Supreme Court was confronted with the issue of whether a

ruling above, this aspect of plaintiff's requested relief is moot.

**16.** *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

federal court may, consistent with the Eleventh Amendment, order state officials to send an explanatory notice to members of a plaintiff class advising them of state administrative procedures available by which class members could receive a determination of whether they were entitled to unpaid welfare benefits. In addressing this question, the Court reaffirmed the general principle that a suit in federal court brought by private parties seeking to impose a liability that must be paid from public funds in the state treasury is barred by the Eleventh Amendment. *Id.*, 440 U.S. at 337, 99 S.Ct. at 1143 (citations omitted). The Court went on to note that a federal court may nevertheless enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury. *Id.* (citations omitted).[17] The Court then the order of the Seventh Circuit and found that a federal court may properly order a state to provide a notice to class members that describes both the outcome and effect of a class action lawsuit that has come to an end. In explaining the rationale for its ruling, the Court noted that the notice states must provide:

> [I]n effect simply informs class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue. Petitioner raises no objection to the expense of preparing or sending it. The class members are given no more ... than what they would have gathered by sitting in the courtroom. (citation omitted).

*Quern v. Jordan*, 440 U.S. at 349, 99 S.Ct. at 1149.

In the present case, it is clear to this Court that the notice requested by the plaintiffs herein seeks substantially more than the notice that was found to be constitutional by the Supreme Court in *Quern*. Far from providing class members with "no more than what they would have gathered by sitting in the courtroom," plaintiffs seek a notice that requires the NYSDSS (i) to calculate for each class member all support collected for their case for a period of approximately nine and one-half years; (ii) to show the amounts and dates of receipts of all sums passed through, identified by the period covered by each such payment; and (iii) to state the terms under which support is passed through and that, if the class member believes that he or she did not receive all the pass-through payments to which they were entitled, or were underpaid pass-through payments for any month, a desk review will be conducted regarding any such discrepancy. *See* Complaint, Prayer for Judgment at ¶ 7. An order by this Court directing such a notice would not be merely ancillary to the prospective relief ordered by this Court regarding future notices that are to be sent by the NYSDSS, but would rather be an order directing retroactive relief to the class members, and is therefore proscribed by the Eleventh Amendment.[18]

Nevertheless, the plaintiff class members are entitled to a *Quern*-type notice regarding the outcome of the present litigation. In this regard, the defendant must ensure that all members of the certified class that may be reasonably identified by the NYSDSS be provided with a notice that states that the notices previously issued by the NYSDSS have been clarified as a result of this lawsuit in order to make it easier for public assistance recipients to correctly determine the amount of the pass-through payments to which they are entitled. Such notice must inform such class members that the federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures—in the present case, desk reviews and Article 78 of the CPLR—which they may

---

**17.** The distinction courts must draw relates to prospective relief, which is entirely consistent with the Eleventh Amendment, and retrospective relief, which is barred by the Eleventh Amendment. *Id.*

**18.** The Court also notes that, unlike the petitioner in *Quern*, the defendant herein has submitted testimony that it would literally be impossible to perform the type of accounting requested by the plaintiffs, as the data needed for such a notice is simply not available for the period dating back to 1984. *See* Affidavit of John J. Bellizzi, Jr. (7/22/92) at ¶¶ 52–55.

wish to pursue. Defendant is also directed to provide copies of this notice to all local social services districts and local support collection offices throughout this state, in a form that would permit such notices to be posted at such offices and available for view by the public.

### IV. Conclusion

Plaintiffs' motion for summary judgment is granted to the extent that the mailers and notices sent out by the NYSDSS to public assistance recipients are to be modified in the manner described above. Plaintiffs' motion for summary judgment is denied in all other respects. Defendant's motion for summary judgment on this aspect of plaintiffs' claims is denied.

The NYSDSS need not provide a fair hearing to public assistance recipients that are dissatisfied with the desk reviews offered by the NYSDSS, as the Due Process rights of public assistance recipients in this state will be met when the NYSDSS implements the modifications to the notices discussed above. Thus, plaintiffs' motion for summary judgment in this regard is denied; defendant's motion for summary judgment on this aspect of plaintiffs' claims is granted.

Finally, with respect to the notice requested by the plaintiffs' regarding the outcome of this lawsuit, plaintiff class members are entitled to a *Quern*-type notice discussed *supra* at p. 943. Defendant is also directed to provide copies of this notice to all local social services districts and local support collection offices throughout the state.

IT IS SO ORDERED.