Jane SCHWARTZ, Lorraine Tufarella, and Yvonne S. Carmona, individually and on behalf of their minor children and on behalf of a class of all other persons similarly situated, Plaintiffs–Appellees,

Georgianna Bloch, Maria Santiago, Maria Moore, Janet Rivera and Doneen Johnson, Intervenors–Plaintiffs–Appellees,

v.

Mary Pat DOLAN, Commissioner of the Tompkins County Department of Social Services, Edwin J. Miner, Commissioner of the Chautauqua County Department of Social Services, Defendants,

Michael J. Dowling, Commissioner, New York State Department of Social Services, Defendant–Appellant.

Nos. 1947, 1948, Dockets 94–7747, 94–7761, 95–7179.

United States Court of Appeals, Second Circuit.

Argued April 17, 1996.

Decided June 24, 1996.

Andrea Oser, Assistant Attorney General, Albany, N.Y. (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Nancy A. Spiegel, Assistant Attorney General, Albany, NY, of counsel), for Appellant.

Susan C. Antos, Greater Upstate Law Project, Albany, N.Y. (Warren B. Scharf, Susan R. Sternberg, The Legal Aid Society, Brooklyn, NY, of counsel), for Appellees.

Before: MINER, McLAUGHLIN and LEVAL, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Commissioner of the New York State Department of Social Services ("DSS") appeals from a judgment of the United States District Court for the Northern District of New York (Scullin, J.) granting partial summary judgment in favor of plaintiffs. After determining that the notices sent by the DSS to plaintiffs concerning their entitlement to "pass-through payments" of child support did not satisfy the requirements of due process, the district court established the format of the notices to be provided to plaintiffs. Although the DSS does not challenge on appeal the district court's determination that it must provide additional information to satisfy due process requirements, the DSS contends that the district court exceeded its authority by establishing the precise format in which that information must be provided in the notices. The DSS also appeals from the denial of its motion, pursuant to Fed.R.Civ.P. 60(b), for relief from the judgment, the district court having found that such relief was not warranted.

For the reasons that follow, we vacate the judgment of the district court and remand this case to the district court for further proceedings consistent with this opinion.

## BACKGROUND

Plaintiffs-appellees, individually and on behalf of their minor children and a class of all persons similarly situated, along with intervenors-plaintiffs-appellees, individually and on behalf of their minor children and a class of all persons similarly situated, (together, the "plaintiffs") are public assistance recipients. The plaintiffs commenced the action giving rise to this appeal against the DSS and defendants Commissioner of the Tompkins County Department of Social Services and Commissioner of the Chautauqua County Department of Social Services (together, the "defendants"), alleging that the defendants had failed, *inter alia*, to provide the plaintiffs with adequate notice to allow them to determine whether they are receiving all the pass-through payments of child support to which they are entitled.

### I. Statutory and Regulatory Scheme

Under federal law, recipients of Aid to Families with Dependent Children ("AFDC") are required to assign to the state their right to receive child support payments. 42 U.S.C. § 602(a)(26). However, AFDC recipients are entitled to receive "the first $50 of any payments for a month received in that month, and the first $50 of payments for each prior month received in that month which were made by the absent parent in the month when due." 42 U.S.C. § 657(b)(1). These

$50 payments are known as "pass-through payments."

In order to give rise to a pass-through payment, a child support payment must be current. *See id.* A payment is considered to be current if its "date of collection" occurs within the month in which the payment is due. *See* N.Y.Comp.Codes R. & Regs. tit. 18, § 347.13(a). The date of collection varies according to the method by which the absent parent makes the child support payment. If the payment is made directly to the proper local social services district, then the date of collection is the date on which the payment is received by the district. § 347.13(a)(1). If the payment is collected by the withholding of income by the absent parent's employer, then the date of collection is the date on which the payment was withheld. § 347.13(a)(2). If the absent parent makes a payment to a social services district other than the proper local district, then the date of collection is the earlier of the date on which the payment was received by the other district or the date on which the payment was withheld from the parent's income by an employer. § 347.13(a)(3).

Under this regulatory scheme, pass-through payments are not distributed to recipients until the corresponding child support payments are received by the proper local social services district. *See* § 347.13(j)(1). Because there may be delays between the date of collection of a child support payment and the date on which the payment actually is received by the proper district, a recipient in some instances may not receive a pass-through payment until a later month.

## II. System of Notices for Public Assistance Recipients

In order to inform recipients of their entitlement to pass-through payments, the DSS has utilized several types of notices that are sent to public assistance recipients. Beginning in the late 1980s, the DSS has issued monthly mailers, which notify recipients that they may receive a pass-through payment based on the child support payments reported in the mailers. These mailers indicate the total amount of child support that was "due, paid and received by [the DSS] last month"

and the "total support that was due and paid for months before last month but wasn't received by [the DSS] until last month." The mailers inform recipients that they may receive a pass-through payment of up to $50 based on each of these totals. However, the mailers do not indicate the specific amount of any pass-through payments that are to be made by the DSS.

Pursuant to federal regulations, the DSS also provides recipients with quarterly notices and access to an automated voice response system ("VRS"). Under 45 C.F.R. § 302.54, a state agency must provide certain information to recipients either on a monthly basis or, if the agency utilizes a VRS, on a quarterly basis. Since 1993, the DSS has employed a VRS and has issued quarterly notices to recipients. As required by the regulations, the quarterly notices "list separately payments collected from each absent parent when more than one absent parent owes support to the family and ... indicate the amount of current support, the amount of arrearages collected and the amount of support collected which was paid to the family." § 302.54(b)(2). However, the notices do not specify the amounts of the pass-through payments made by the DSS. The VRS allows callers to obtain for the previous month the same type of information provided on the quarterly notices.

Since 1993, the DSS also has furnished to recipients a copy of a receipt that records the transaction of each pass-through payment made by the DSS. This document sets forth the amount of the pass-through payment. In addition, the DSS provides recipients with client information booklets when they apply for public assistance and at their periodic recertification interviews. These booklets contain general information about the pass-through payment program and advise recipients that they may challenge a determination concerning their entitlement to a payment by requesting a desk review.

## III. Procedural History of Class Action

Following the commencement of their action in 1985, the plaintiffs conducted discovery and engaged in settlement discussions with the defendants. However, the parties

failed to come to an agreement, and, in 1992, the plaintiffs and the defendants moved for summary judgment. Thereafter, the parties engaged in further settlement discussions and made additional submissions to the district court. On April 29, 1993, counsel for the DSS indicated in a letter to the district court that the DSS would be willing to make certain changes in the monthly mailers. However, the DSS did not agree to provide other information demanded by the plaintiffs in the notices.

On June 16, 1994, the district court granted partial summary judgment in favor of the plaintiffs. *Schwartz v. Dolan*, 854 F.Supp. 932 (N.D.N.Y.1994), *modified*, 1994 WL 422328 (N.D.N.Y. Aug. 8, 1994). The court found that, under the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the notices used by the DSS did not satisfy the requirements of due process. The district court directed the DSS to modify its notices as follows:

> The [DSS] is hereby ordered to continue the use of the monthly mailer and to (a) clarify the preprinted language on the monthly mailer substantially in the manner requested by the plaintiffs; (b) provide, in the monthly mailer, information regarding the legal collection date of the payment, the form of payment, the amount of the pass-through payment and the amount of the payment obligation; (c) change the language contained in the Client Information Booklet relating to pass-through payments substantially in the manner requested by the plaintiffs; (d) consider proposals offered by the plaintiffs with respect to changes to the VRS; (e) include in (or with) the quarterly notice (i) generic information concerning the pass-through, (ii) information that advises public assistance recipients of other media through which information is available concerning their pass-through payments, and (iii) a breakdown, for each month covered by the quarterly notice, of the amount of support payments received by the local [social services districts] for the public assistance recipient; (f) add the public assistance case number to the upstate mailer; (g) provide a coded explanation of why a specific recipient of the mailer may not receive a pass-through payment for the period reported or why less than $50.00 is passed-through, as well as an explanation of the pertinent codes; cross-reference the monthly mailer and the itemized receipts issued by the Electronics Benefits Issuance Computer ("EBICS") and the Electronic Payment Funds Transfer ("EBFT") systems, by which public assistance recipients receive their public assistance benefits and pass-through payments; and (h) clarify the EBICS/EBFT codes substantially in the manner requested by the plaintiffs.

*Schwartz*, 854 F.Supp. at 940 (footnote omitted). The district court denied the plaintiffs' motion for summary judgment on their claim that the defendants must provide public assistance recipients with administrative hearings if there are disputes concerning their entitlement to pass-through payments. Judgment was entered on June 17, 1994.

In October of 1994, the DSS moved, pursuant to Fed.R.Civ.P. 60(b), for relief from the judgment. The DSS also moved, pursuant to Fed.R.Civ.P. 62, to stay the judgment of the district court pending appeal. The DSS requested that the district court modify the judgment to allow the DSS to design the specific format of the notices. On January 17, 1995, the district court denied the motions. *Schwartz v. Dolan*, 159 F.R.D. 380 (N.D.N.Y.1995). The court found that there were "no new, let alone extraordinary, circumstances" to warrant relief from the judgment, and that "the judgment work[ed] no extreme and undue hardship." *Id.* at 383. In January of 1996, the DSS moved in this Court for a stay of the judgment pending appeal. By an order dated February 13, 1996, we denied the motion.

## DISCUSSION

On appeal, the DSS does not challenge the district court's determination that, in order to satisfy the requirements of due process, it must provide additional information in the notices that it sends to public assistance recipients concerning their entitlement to pass-through payments. However, the DSS argues that the district court "exceeded its power in directing the precise manner in

which that information must be provided." The DSS contends that the district court erred in "prescrib[ing] its own very specific notice scheme" without allowing "the parties a chance to present objections." We agree with the DSS that, after the district court found that the notices did not satisfy the requirements of due process, the court erred in failing to allow the DSS an opportunity to submit its own proposal for the modification of the notices.

■■■ "The standard for reviewing the scope and type of injunctive relief issued by a district court is whether the relief amounts to an abuse of the court's equitable remedial discretion." *Eng v. Smith,* 849 F.2d 80, 82 (2d Cir.1988). We have stated that a district court has broad discretion in fashioning an equitable remedy for a constitutional violation. *Association of Surrogates v. New York,* 966 F.2d 75, 79 (2d Cir.), *modified,* 969 F.2d 1416 (2d Cir.1992). However, the court's "[d]iscretion to frame equitable relief is limited by considerations of federalism, and remedies that intrude unnecessarily on a state's governance of its own affairs should be avoided." *Id.; see also Dean v. Coughlin,* 804 F.2d 207, 213 (2d Cir.1986) ("Although a federal district court's powers are broad, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief. . . ." (quotation omitted)). We have emphasized that "[f]ederal courts must take care to exercise a proper respect for the integrity and function of local government institutions." *Association of Surrogates,* 966 F.2d at 79 (quotation omitted).

In the context of unconstitutional prison conditions, this Court in *Dean* observed that, "[o]nce the district court finds an unconstitutional condition in a state's prisons, the court may be tempted to right the wrong by assuming control of the entire system in which the offensive condition exists and prescribing a new system deemed to meet constitutional requirements." 804 F.2d at 213. However, we stated that the Supreme Court has cautioned courts "to give the state a reasonable opportunity to remedy a constitutional defi-

ciency, imposing upon it a court-devised solution only if the state plan proves to be unfeasible or inadequate for the purpose." *Id.*

■■■ In the present case, at the same time that the district court found that the notices provided by the DSS did not satisfy the requirements of due process, the court gave detailed instructions for the design of the notices. The district court did not allow the DSS an opportunity to present its own plan after it ruled that the existing scheme was unconstitutional. The DSS asserts that it can design notices that "provide plaintiffs with all of the elements of information that the district court has ruled DSS must provide," but that are in a simpler format and that are less costly for the DSS to implement. For instance, according to the DSS, the changes ordered by the district court to the monthly mailers and the quarterly notices would require extensive modifications to the computer systems that create the notices.[1] The DSS claims that it could instead provide all the information required for due process by issuing a monthly version of its quarterly notices, and that this method would not require significant alterations to its computer systems. The DSS also points out that the existing notice system has evolved over time into a "cumbersome" and "piecemeal" scheme that is potentially confusing to public assistance recipients. Rather than adding to this existing notice framework as directed by the district court, the DSS asserts that it can develop a simpler and more understandable system of notices.

In view of the need for federal courts "to exercise a proper respect for the integrity and function of local government institutions" and to avoid "intrud[ing] unnecessarily on a state's governance of its own affairs," we think that, because there were different possible ways to remedy the violation, the DSS should have been allowed the opportunity to present its own proposal for the modification of the notices after the existing scheme was declared unconstitutional. Accordingly, we vacate the judgment of the district court as to the remedy portion only. We remand this

---

1. The monthly mailers are generated by the DSS' Welfare Management System, and the quarterly notices are generated by its Child Support Management System.

case to the district court with instructions that the DSS is to have at least 90 days to submit to the district court for its consideration a plan for the implementation of notices that provide the plaintiffs with all the elements of information that the district court found to be necessary to satisfy the requirements of due process.

## CONCLUSION

The judgment of the district court is vacated as to the remedy portion only, and this case is remanded to the district court in accordance with the foregoing.